UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERICK BRIGGS,<br><br>               Plaintiff,<br><br>v.<br><br>CANYON COUNTY SHERIFF'S DEPUTY LT. TAMI FAULHABER; LT. ANDREW KIEHL; ART MACIAS; CANYON COUNTY JAIL MEDICAL CLINIC; CANYON COUNTY SHERIFF; JOHN DOES 1-5; and JANE DOES 1-4,<br><br>               Defendants. | Case No. 1:14-cv-00146-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is a motion for summary judgment filed by Defendants Andrew Kiehl, Art Macias, Canyon County Medical Clinic, Canyon County Sheriff, John Does 1-5, and Jane Does 1-4,[1] seeking judgment as a matter of law on all claims asserted by pro se Plaintiff Erick Briggs. (Dkt. 48.).[2]

---

[1] The Court approved the parties' stipulation to dismiss Defendant Tami Faulhaber as a named party in this matter. (Dkt. 58.)

[2] Despite notifying Briggs of his duty to respond and the consequences of not responding to Defendants' motion, Briggs did not respond. (Dkt. 52.) Defendants filed a notice of non-compliance, stating they are "entitled to have the Court enter judgment in their favor." (Dkt. 59.) Despite Briggs's lack of response, the Court will decide the case on its merits.

**REPORT AND RECOMMENDATION—1**

In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the pending motion will be decided on the record without oral argument. Dist. Idaho. L. Rule 7.1(d). For the reasons that follow, the Court will make the following recommendation to grant Defendants' motion.

## REPORT

## BACKGROUND[3]

Briggs's claims arise out events which occurred while he was a pretrial detainee at the Canyon County Detention Center (CCDC). According to the amended complaint, Briggs alleges he slipped and fell in the upper tier G-Pod shower due to the lack of grip tape or a non-slip substance incorporated into the shower step. Briggs's allegations arise from the medical care he received following his slip and fall, and the condition of the shower step at the time of his fall.

**1. Medical Care**

Briggs slipped and fell in the shower on October 17, 2013. When prison officials asked Briggs about his injuries, Briggs stated his neck, head, and right wrist hurt. Briggs did not mention he injured his molar.[4] Briggs was immediately transported to West Valley Medical Center (WVMC) by ambulance for a medical evaluation, which included

---

[3] Unless otherwise indicated, the facts are undisputed. Briggs failed to properly address Defendants' statement of facts as required by Fed. R. Civ. P. 56(c). Accordingly, the Court will consider Defendants' facts as undisputed for the purposes of consideration of the motion. *See* Dist. Idaho L. Rule 7.1(e).
[4] In Briggs's deposition he was asked: "did you tell them about your teeth?" Briggs responded: "No, sir…" Aff. Kane, Ex. B. (Dkt. 51-1 at 7.)

**REPORT AND RECOMMENDATION—2**

an x-ray of his right wrist. Healthcare providers at WVMC concluded Briggs suffered a minor head injury, abrasion to the head, multiple contusions to the right elbow and right wrist, and acute cervical strain. He was discharged from WVMC the following morning and was instructed to apply ice and to take three 200 milligram Motrin pain tablets, four times daily for six days.

Upon his return to CCDC, Defendant Art Macias, a registered nurse and CCDC medical provider, examined Briggs before releasing him back into the prison's general population. Macias noted mild tenderness in Briggs's neck area and authorized Briggs to take 600 milligrams of Ibuprofen three times daily for seven days, and thereafter as needed for pain.

On October 20, 2013, Briggs submitted a medical request form, requesting a second mattress and to be seen by a WVMC doctor for a second medical opinion. In the request, Briggs explained his wrist continued to swell and that he was experiencing headaches and blurred vision. Macias saw Briggs on October 21, 2013. He authorized Briggs to have an extra blanket to use as a pillow for two weeks and prescribed Briggs additional pain medication and a right wrist brace. Because no in-stock brace fit Briggs, Macias ordered a new one. Macias had no control over the brace delivery date.

On October 27, 2013, Briggs submitted another medical request form complaining of continuing pain in his right wrist and neck.[5] Two days later, Briggs was examined by Alex Casebolt, a CCDC physician's assistant. Casebolt noted tenderness and swelling of

---

[5] Briggs sent another medical request form on October 26, 2013. Brigg's request is illegible; however, the response indicates an authorization to re-fill Briggs's ibuprofen prescription.

**REPORT AND RECOMMENDATION—3**

Brigg's right wrist and ordered Briggs to be sent back to WVMC for more x-rays. On October 31, 2013, Briggs submitted an inmate communication form requesting to be taken to WVMC for his x-rays. Briggs indicated on the form that he sought assistance from the jail deputies and medical staff assigned to pill call in scheduling his x-ray and delivering his wrist brace, but nobody would assist him.[6] On November 1, 2013, Briggs was transported to WVMC. Upon review of Brigg's x-ray, medical personnel noted no acute fractures, no visible soft tissue swelling, no significant interval changes, and no acute radiology abnormality.

On November 3, 2013, Briggs filed another inmate concern form, requesting the ordered wrist brace and stronger pain medication due to increased wrist pain. On the morning of November 5, 2013, Casebolt examined Briggs and increased his pain medication. Briggs received his wrist brace later that afternoon.

On November 12, 2013, Macias examined Briggs for an infection unrelated to his slip and fall injuries. However, at the appointment, Briggs informed Macias his wrist and neck continued to hurt. Macias consulted with Casebolt, and together they agreed Briggs should be seen by an orthopedic specialist. On November 15, 2013, Briggs met with orthopedic surgeon, Michael Shelvin. Upon examination, Shelvin assessed Briggs's right

---

[6] Briggs suggests in the form that the reason he was not provided assistance was because he had plans to retain legal representation on this matter. However, Briggs's complaint alleges that once he informed prison staff of his plans to retain counsel, he was provided with assistance. He does not allege retaliation. Am. Compl. (Dkt. 15-2 at 11.)

**REPORT AND RECOMMENDATION—4**

wrist and diagnosed a triangular fibro-cartilage complex tear.[7] Shelvin's treatment plan for Briggs included immobilization of his wrist and continued dosages of ibuprofen.

Two weeks later, on November 30, 2013, Briggs submitted another medical request form, requesting to be seen by a dentist to fix the molar he claims he had broken in the slip and fall. This was the first time Briggs requested dental care from medical personnel with regard to the broken molar. On December 3, 2013, Macias met with Briggs and scheduled Briggs for an appointment to meet with a dentist and oral surgeon on December 11, 2013.

Briggs had previously submitted a medical request form on September 16, 2013, before his fall, requesting a dentist appointment because three of his teeth had been sore for over a month. Within the month Briggs claimed to have suffered from oral pain, he had been seen by Macias twice for other medical issues. Macias indicated in both examinations Briggs did not mention any trouble with his teeth. In response to Briggs's medical request, Macias responded: "which teeth?" Aff. Kane, Ex. G. (Dkt. 51-2 at 6.) Briggs never responded to Macias's query and a dental examination was not scheduled. These dental issues were eventually addressed in Briggs's December 11, 2013 dental appointment.

**2. Prison Shower Remodel and Alleged Defective Shower Step**

On January 14, 2013, Andrew Kiel was promoted to the position of Lieutenant of Inmate Control for CCDC. When he transitioned into his role, Kiehl was tasked with

---

[7] Shelvin ordered additional x-rays and upon review noted: "negative for any scaphoid fracture. No scapholunate interval widening." Aff. Kane, Ex. E. (Dkt. 51-1 at 36.)

**REPORT AND RECOMMENDATION—5**

managing the shower pan installation project for pretrial detainees and inmates. Prior to his promotion, Kiehl was not involved in the design, remodel, or renovation of the CCDC facilities. The installation took place between February and March of 2013.

The project consisted of installing new shower pans over the old shower pans. The new pans were made of a rough surfaced, slip resistant material. After the shower pans were installed, it was discovered the distance from the top of the new shower pans to the bathroom floor was too great for inmates to safely step out of the shower. To remedy this problem, the prison installed a concrete step covered with slip resistant tiles. Slip resistant floor mats were placed in front of the concrete steps. The shower area floors were coated with a sand additive to help with slip resistance.

Between Kiehl's promotion on January 14, 2013, and Briggs's slip and fall incident in the upper tier G-Pod shower on October 17, 2013, Kiehl knew of four other incidents in CCDC where other inmates had fallen in shower areas. One incident occurred in the lower tier G-Pod showers. There, an inmate slipped and fell in the shower area because he was trying to step over another inmate's property. The other three incidents occurred in other CCDC dormitories. In two of these instances, the inmates had fallen for medical reasons, i.e. feeling dizzy or balance problems. In the last instance, the inmate had fallen because he slipped on water. Kiehl was not notified by the inmates who had fallen or by jail personnel responding to the falls that any of the falls were caused by a safety issue that CCDC could have addressed.

On October 23, 2013, just shy of one week after Briggs's slip and fall incident, Briggs filed an inmate grievance form, claiming the shower step he slipped on was

**REPORT AND RECOMMENDATION—6**

unsafe. Kiehl responded and informed Briggs the shower step had non-slip surface materials incorporated into the step. Kiehl looked at the shower area where Briggs fell and submitted a work order requesting slip resistant tape be installed on all the shower pans in G-Pod as an additional safety measure.

Based on the above facts, Briggs's amended complaint alleges several Eighth Amendment violations under Section 1983 against Macias, the Canyon County jailers John Does 1-5, Canyon County pill call ladies Jane Does 1-4, Canyon County Medical Center, and the Canyon County Sheriff for inadequate medical care, and against Kiehl for his failure to protect against the alleged defective shower step. Briggs alleges also state tort claims. Defendants seek summary judgment on all of Briggs's claims.

## MOTION FOR SUMMARY JUDGMENT (DKT. 48)

**1. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir.2010) (quoting *Anderson*, 477 U.S. at 248).

**REPORT AND RECOMMENDATION—7**

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

**2. Discussion**

    **A. Briggs's Constitutional Claims**

        **i. Section 1983 Elements**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution for federal law by a person acting under the color of state law. *Id. Wyatt v. Cole*, 504 U.S. 158, 161 (1982).

The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, applies to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to a prisoner's rights under the Eighth Amendment, the same standards apply. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010)).

**REPORT AND RECOMMENDATION—8**

### ii. Inadequate Medical Treatment Claims

To state a constitutional claim regarding prison medical care, a plaintiff must allege facts showing prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The United States Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an [constitutional] violation only if those needs are 'serious.'" *Id.*

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay led to further injury or substantial harm. *Wood v. Idaho Dep't of Corr.*, 391 F. Supp. 2d 852, 857 (D. Idaho 2005) (citing Wood *v. Housewright,* 900 F.2d 1332, 1335 (9th Cir.1990); *Hallett v. Morgan,* 296 F.3d 732, 744–46 (9th Cir.2002).

Briggs alleges three claims against Macias regarding inadequate medical treatment. He claims Macias acted with deliberate indifference by delaying the treatment

**REPORT AND RECOMMENDATION—9**

of Brigg's right wrist because he failed to timely provide Briggs with a wrist brace. He claims also that Macias acted with deliberate indifference by delaying dental care treatment for both his broken molar and pre-fall sore teeth. Defendants do not challenge whether Briggs's medical concerns were serious, but instead, they argue, Macias did not act with deliberate indifference to any of Briggs's medical and dental needs. For reasons more fully explained below, the Court agrees with Defendants and concludes there is no genuine issue of material fact upon which a reasonable jury could conclude that Macias acted with deliberate indifference to Briggs's medical or dental needs.

### 1. Wrist Brace

On October 21, 2013, Macias saw Briggs concerning continuing pain in his wrist, and prescribed the use of a wrist brace. During the appointment, Macias tried to provide Briggs with an in stock wrist brace; however, none fit. Macias immediately placed an order for a new one. At the time of the appointment, Briggs admits Macias had done nothing wrong in regard to treating him for his wrist pain. Aff. Kane, Ex. B. (Dkt. 51-1 at 10.) Briggs received the wrist brace on November 5, 2013—fifteen days after Macias placed the order. Macias asserts once an order is placed, he has no control over delivery time. Other than alleging in his complaint that the fifteen day period it took to receive the wrist brace was too long, Briggs does not provide evidence to support a finding that Macias intentionally delayed his access to the wrist brace.

Likewise, Briggs does not provide evidence to support a finding that the fifteen day delay in receiving his brace resulted in further injury to his wrist. In fact, the evaluation of the additional x-rays taken on November 1, 2013—11 days after ordering

**REPORT AND RECOMMENDATION—10**

the brace—suggests otherwise. Specifically, medical personnel observed: "no acute fractures, no visible soft tissue swelling," and concluded, "no significant interval change and no acute radiological abnormality." Briggs does not rebut this finding.

Accordingly, the Court finds there are no genuine issues of fact upon which a reasonable jury could conclude Macias intentionally delayed Briggs's access to a wrist brace or that the delay resulted in further harm to Briggs's wrist.

### 2. Broken Molar

Immediately after Briggs's October 17, 2013 slip and fall incident, when asked by prison officials about his injuries, Briggs did not mention he broke his molar. Likewise, he did not mention his broken molar in the five separate medical appointments he had between October 17, 2013 and November 5, 2013. Briggs first mentioned his broken molar amongst a list of his other slip and fall injuries in an inmate communication form he submitted on November 11, 2013.[8] As a suggested solution, Briggs requested an appointment with an orthopedic specialist—he did not request a dental appointment. The form was forwarded to Macias for review. However, before Macias responded, he had an appointment with Briggs on November 12, 2013, during which Briggs did not mention his broken molar.[9]

It was not until November 30, 2013, when Briggs filed a medical request form notifying medical staff he had broken a molar, and for the first time, requested dental care

---

[8] Specifically, in the request/issue section on the communication form, Briggs explained: "I injured my head (split open) my neck (still painful headaches [sic]) broked molar tooth, right elbow (painful [sic]) and severely damaged my right wrist, my wrist is disfigured and really painful due to golf ball sized 'lump'. . . ." Aff. Kane, Ex. H. (Dkt. 51-2 at 23.)

[9] Macias responded to the form on November 13, 2013, and stated: "you have an appointment to see an [orthopedic] specialist." *Id.*

**REPORT AND RECOMMENDATION—11**

to fix it. Three days later, Macias saw Briggs with respect to his molar and scheduled a dental appointment. On December 11, 2013, Briggs was seen by a dentist and oral surgeon.

Macias may have been aware Briggs had a broken molar upon review of the inmate communication form dated November 11, 2013. However, Briggs did not request to be seen by a dentist at that time. Within three days of his first request to be seen by a dentist for his broken molar, Macias met with Briggs, approved his request, and scheduled a dental appointment. Briggs offers no evidence to support his assertion that Macias acted with deliberate indifference in delaying his dental care needs with regard to the molar. The Court finds there is no genuine issue of material fact upon which a reasonable jury could conclude that Macias was deliberately indifferent to Briggs's dental care.

### 3. Pre-Fall Sore Teeth

On September 16, 2013, prior to Briggs's October slip and fall, he filed a medical request form requesting a dental appointment because three of his teeth had been sore for over one month. Macias had two appointments with Briggs, one on September 3, 2013, and the second on September 12, 2013. However, Briggs did not communicate his need to be seen by a dentist during either of these appointments. Macias's response to Briggs's request stated: "You were seen in clinic and you never mentioned nothing, which teeth?" Aff. Kane, Ex. G. (Dkt. 51-2 at 6.) Because Briggs did not respond to Macias's question, a dental appointment was not made. Macias asserts it was not his intent to ignore Briggs's serious medical concerns. Aff. Macais, ¶ 35. (Dkt. 48-5 at 6.)

**REPORT AND RECOMMENDATION—12**

Briggs offers no evidence that he responded to Macias's question regarding which teeth hurt. Likewise, he offers no evidence to support his assertion that Macias acted with deliberate indifference by failing to schedule a dental appointment. As soon as Briggs mentioned his teeth again, he was seen by a dentist almost immediately. Accordingly, the Court finds there is no genuine issue of fact upon which a reasonable jury could conclude that Macias acted with deliberate indifference with regard to Briggs's pre-fall dental needs.

### iv. Failure to Protect Claim

To prevail on a Fourteenth or Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Fourteenth or Eighth Amendment. *Id.* at 828. Deliberate indifference exists when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Id.* at 838.

Briggs alleges Kiehl acted with deliberate indifference to Briggs's safety because Kiehl knew of other inmate slips and falls and knew the shower area posed a significant risk, but failed to make the showers safe. Alternatively, Briggs contends Kiehl had reason to know the showers posed a significant risk because Kiehl was in charge of the shower remodel project. Defendants do not challenge whether the showers themselves posed a significant risk, but instead argue Kiehl was not deliberately indifferent to Briggs's safety because he did not know, or did not have a reason to know, that the shower areas in G-

**REPORT AND RECOMMENDATION—13**

Pod were unduly hazardous for inmates to use. For reasons more fully explained below, the Court finds there is no genuine issue of material fact upon which a reasonable jury could conclude Kiehl was deliberately indifferent to Briggs's safety.

The United States Court of Appeals for the Ninth Circuit has flatly stated slippery prison floors themselves do not constitute a constitutional violation. *Jackson v. State of Ariz.,* 885 F.2d 639, 641 (9th Cir.1989) (superseded by statute on other grounds). However, in *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998), the Ninth Circuit acknowledged that such a claim may be established where there is sufficiently special or unique circumstances that require the Court to depart from the general rule barring Eighth Amendment liability in prison slip and fall cases. In *Frost*, the Ninth Circuit reversed summary judgment for a prisoner who asserted an Eighth Amendment claim where prison officials were aware that a pretrial detainee on crutches had previously fallen and injured himself several times in the shower. *Id.* at 1129.[10] Specifically, the prisoner put the officials on notice by filing several grievance forms alerting the officials the showers posed a significant risk to him. *Id.*

Similarly, the Ninth Circuit in *Townsend v. Sisto*, 457 F.App'x 653, 654 (9th Cir. 2011), concluded the district court's dismissal of a prisoner's Eighth Amendment claim was improper where the prisoner "alleged prisoner officials were aware that the poorly maintained shower floors posed a risk to inmate safety yet failed to take reasonable measures to avoid that threat." Specifically, the prisoner in *Townsend* alleged defendants:

---

[10] The decision rests also on the defendants' failure to accommodate the Plaintiff's disabled condition—not simply the slippery floor. *Id.*

**REPORT AND RECOMMENDATION—14**

> [K]new or should have known that the showers at California State Prison required routine maintenance and repair; that they did not follow their own operation plan; that the shower floors were uneven, had missing tiles, were slippery, were not equipped with mats, safety strips or handicap bars; that inmates had complained about the conditions of the showers; and that, as a result, plaintiff fell and his shoulder came out of its socket.

*Townsend v. Sisto*, 2010 WL 2628975, at *1 (E.D. Cal. June 25, 2010) *rev'd and remanded*, 457 F.App'x 653 (9th Cir. 2011).

The facts in the instant case are distinguished from the sufficiently special and unique circumstances cited above. Unlike the prison officials in *Frost* and *Townsend*, Kiehl was not notified that the G-Pod shower area posed a significant risk to inmate safety. Though Kiehl knew of four other inmate slip and fall incidents after the shower remodel, only one of those falls occurred in G-pod, and the falls were caused by additional factors independent from the condition of the prison floor, including: dizziness, balance problems, and tripping over another inmate's property. Of those incidences, Kiehl states he never received a grievance form indicating that any could have been prevented by CCDC. Likewise, Briggs did not notify Kiehl the shower posed a significant risk of injury until after Briggs had fallen. The fact Kiehl requested grip tape be installed to the shower steps upon Briggs's request after his fall, does not indicate that Kiehl was aware of the risk the condition of the shower may have posed beforehand.

Further, unlike the condition of the poorly maintained shower floors as alleged in *Townsend*, there are no disputed facts upon which a reasonable jury could find the condition of the G-Pod shower floors was so serious that Kiehl should have known of the risk it posed to inmates. The prison shower areas had just been remodeled. As part of the

**REPORT AND RECOMMENDATION—15**

remodel, non-slip resistant material had been incorporated into the shower floors and steps. In addition, slip resistant mats were placed in front of the showers, and the bathroom floor leading into the showers was coated in slip-resistant material.

Viewing the evidence in the light most favorable to Briggs, there are no facts upon which a reasonable jury could conclude Kiehl knew or had reason to know the condition of the shower floor posed a significant risk to inmate safety and that Kiehl disregarded that risk. The existence of a slippery shower floor and nothing more does not give rise to a constitutional claim, even where here, it may have caused a prisoner to slip and fall. *See Jackson*, 885 F.2d at 641 (holding that slippery floors, without more, do "not state even an arguable claim for cruel and unusual punishment").   Accordingly, the Court will recommend summary judgment be granted in favor of Defendants as it relates to the defective shower step claim.

### v. Claims Against Doe Defendants

In his amended complaint, Briggs alleges the Canyon County jailers (John Does 1-5) and the Canyon County pill call ladies (Jane Does 1-4) acted with deliberate indifference to his serious medical needs by delaying, denying, or ignoring his requests for his wrist brace, a second medical opinion, and to be transported to WVMC for additional x-rays. Defendants argue the Doe jailers and pill call ladies should be dismissed as parties because Briggs failed to amend his complaint to identify them despite having had the names of individuals and ample time to request leave to amend.

In *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.980), the United States Court of Appeals for the Ninth Circuit stated, as a general rule, the use of "John Doe" to

**REPORT AND RECOMMENDATION—16**

identify a defendant is not favored. The Ninth Circuit also noted, however, that situations arise where the identity of the alleged defendants will not be known prior to filing the complaint and that in such circumstances, the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or the complaint would be dismissed on other grounds. *Id.*

In *Gillespie,* the pro se plaintiff served interrogatories which sought to obtain the names and addresses of the persons named as Doe defendants. *Id.* at 642-43. The Ninth Circuit held the district court abused its discretion in dismissing plaintiff's complaint without requiring defendants to answer the interrogatories because it was likely the answers to the interrogatories would have disclosed the identity of the John Doe defendants. *Id.* at 643; *But cf. Garcia ex rel. Estate of Acosta-Garcia*, 428 F.App'x 706, 708-09 (9th Cir. 2011) (upholding the district court's decision to deny plaintiff's leave to amend her complaint to identify Doe defendants because the plaintiff had ample opportunity to conduct reasonable discovery, identify defendants, and seek leave to amend the complaint to name them properly.)

In this case, during Briggs's deposition on May 27, 2015, Briggs talked about not being given the names of the individuals who dispensed medications ("pill call ladies") and jail deputies who worked in G-Pod during the time Briggs was incarcerated. Aff. Kane, Ex. B. (Dkt. 51-1 at 5.) However, on February 17, 2015, Defendants responded to Briggs's First Set of Discovery. In that set of discovery, Briggs requested identification of "medical personnel responsible for distribution of medications…. Working between 7

**REPORT AND RECOMMENDATION—17**

a.m. to 7 p.m. in G-Pod between 9-1-2013 and 2-25-2014." The second part of the request asked for the "duty roster of Security Staff Pod Deputies [sic] working between 7 a.m. to 7 p.m. in G-Pod between 9-1-2013 and 2-25-2014." Aff. Kane, Ex. N. (Dkt. 51-3 at 13-14.) Defendants provided a list of all jail medical personnel working between the dates requested and referred Briggs to the Medication Administration Record for the time period requested, which provided the date, the medication, and initials of the individuals who dispensed medication to Briggs. Defendants also provided a complete duty roster for the time period requested for CCDC jail deputies. The roster identifies where each deputy was assigned for the day.

The Court finds Briggs was provided, through discovery, the information necessary to identify the Doe defendants he intended to name in his amended complaint, and also that he had ample opportunity to seek leave to amend.[11] Briggs did not diligently do so, and accordingly the Court will recommend that his claims against the Doe defendants be dismissed.

### vi. Claims against Canyon County Jail Medical Center/Canyon County Sheriff in Official Capacity[12]/Canyon County

In his amended complaint, it is unclear whether Briggs intended to assert claims against the Canyon County Sheriff or Canyon County Medical Center.[13] Defendants

---

[11] The parties were permitted to amend pleadings or to join parties on or before March 5, 2015. Sch. Order, ¶ 2. (Dkt. 24 at 2.)

[12] The Court's Initial Review Order (Dkt. 11 at 8) concluded Briggs did not state a claim against the Canyon County Sheriff in his individual capacity; however, the Court permitted leave to amend the complaint to include such an allegation. The amended complaint does not plausibility allege the Sheriff personally participated in Briggs's medical care, or that he is subject to supervisory liability. Accordingly, Briggs's amended complaint does not state a claim against the Sheriff in his individual capacity.

**REPORT AND RECOMMENDATION—18**

assert if he did, both the Sheriff and the Medical Center are improper defendants. Defendants assert further, if the proper party (Canyon County) is substituted, Briggs's claims still fail because Briggs fails to establish any policy, custom, or regulation governing CCDC operations which caused him to suffer deprivation of his constitutional rights. Assuming Briggs intended to assert claims against the medical center and sheriff, the Court considers the claims more fully below and will recommend summary judgment be granted in favor of Defendants.

Canyon County Medical Clinic is an improper party as it lacks the ability to sue or be sued. *See* Fed. R. Civ. P 17(b) (federal courts look to state law to determine whether a department or municipality may be sued); Idaho Code § 6-902 (Idaho law does not permit a plaintiff to sue anything other than a "political subdivision" for a tort, and the medical center is not a "political subdivision" as that term is defined under Idaho law.). Therefore, the Court will recommend Canyon County Medical Center and the Canyon County Sheriff be dismissed as improper parties, and consider instead whether Briggs has properly asserted a claim against Canyon County. *See* Melendres *v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) (when an entity lacks separate legal status from a county, and thus, is incapable of being sued, the correct party can be substituted).

It is well settled, to assert a claim against a municipality under Section 1983, a plaintiff must establish the existence of a policy or custom that caused the alleged constitutional violation. *See Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 694–95

---

[13] Though the names appear in the caption, it is unclear whether they were named as separate parties or whether their titles simply modified the individuals being sued, i.e. whether Briggs meant "Canyon County Jail Medical Center and Pill Call Jane Does 1-4," or "Canyon County Jail Medical Center Jane Does 1-4."

**REPORT AND RECOMMENDATION—19**

(1978). Briggs has failed to assert any CCDC custom or policy which caused the alleged deprivation of his constitutional rights. Accordingly, the Court will recommend summary judgment be granted in favor of Defendants as it relates to the claims, if any exist, against Canyon County.

### B. State Law Claims[14]

In its order on Briggs's first amended complaint (Dkt. 17), the Court permitted Briggs to proceed on his Eighth Amendment claims. Briggs was not given permission to proceed on any state law tort claims. Therefore, to the extent Briggs alleged any state claims in his amended complaint, the Court declines to address them.

### CONCLUSION

The Court will recommend that summary judgment be granted in favor of Defendants as to all of Briggs's claims.

### RECOMMENDATION

1. Defendant's Motion for Summary Judgment (Dkt. 48) be GRANTED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **December 07, 2015**

Honorable Candy W. Dale
United States Magistrate Judge

---

[14] Briggs makes reference in his amended complaint that he filed a notice of tort claim under state law. However, it does not appear the amended complaint alleges any state law claims. In addition, Canyon County has no record of the notice. Aff. Yamamoto, ¶ 3. (Dkt. 48-6 at 3) ("My Staff reviewed the records maintained by my Office and informs me they have found no claim giving notice of a possible lawsuit filed by Erick Briggs or on his behalf since 2011.").

**REPORT AND RECOMMENDATION—20**